(259 P.3d 737)
No. 103,285

CHRISTOPHER STABEL and KAMRYN ALVIA MEYER, A Minor Child, By and Through Her Next Friend, CHRISTOPHER STABEL, *Appellees,* v. JESSIKA LEIGH MEYER, *Appellant.*

Opinion filed May 27, 2011.

*Leslie A. Hess,* of Hays, for appellant.

*Kip Johnson,* of Oller, Johnson & Bittel, L.L.C., of Hays, for appellees.

Before PIERRON, P.J., ATCHESON, J., and LARSON, S.J.

PIERRON, J.: This appeal questions a district court's authority to change a child's last name without both parents' consent in a paternity action brought under the Kansas Parentage Act (KPA), K.S.A. 38-1110 *et seq.* Here, the mother, Jessika Leigh Meyer, appeals from the district court's holding that although case law conflicts, it would follow cases indicating it had the authority to consider the father's, Christopher Stabel request to change their child's, Kamryn Alvia Meyer, last name without Jessika's consent.

Jessika was dating Christopher when she became pregnant. On Kamryn's birth certificate Jessika named Christopher as the father but gave Kamryn her last name—Meyer. Christopher credits Jessika's refusal to give Kamryn's his last name as the catalyst that ended their relationship. He requested that the district court

change Kamryn's last name to Stabel as part of his paternity action filed shortly after Kamryn's birth under the KPA.

As the paternity action progressed, Jessika and Christopher were unable to resolve the issue of Kamryn's last name. The district court ordered them to submit written arguments on that issue. Jessika argued the court lacked statutory authority to change Kamryn's last name without her consent, but even if the court had such authority, Kamryn's last name should remain Meyer. Christopher insisted the court had discretion to grant his request based on Kamryn's best interests.

In a memorandum decision, the district court expressed justifiable confusion over the apparent conflict in the appellate case law relied upon by the parties but ultimately concluded it had authority to change Kamryn's last name after it heard evidence to determine if the change was in her best interests. After conducting an evidentiary hearing, the court ordered Kamryn's last name changed to Stabel.

Jessika's sole issue on appeal is that the district court lacked statutory authority to change Kamryn's last name to Stabel because the KPA allows the court to change a child's surname only if both parents consent, and she did not consent. Christopher acknowledges there are inconsistent decisions from the appellate courts on the issue and asks us to either follow the case law supporting the district court's conclusion that it had authority to change Kamryn's last name based on her best interests or to find that, as a matter of public policy, a district court should be allowed to determine what surname is best for a child born of unwed parents.

We have unlimited review over the legal question of whether a court has statutory authority. See *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 165, 210 P.3d 105 (2009). Appellate courts also have unlimited review when, as here, we are called upon to interpret statutes. See *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

## K.S.A. 38-1130

Jessika's argument primarily centers around K.S.A. 38-1130, which sets forth a procedure for parents who jointly desire to have

their child's birth certificate amended to add the name of a parent, correct either parent's name, or change the child's last name to that of either parent. That statute requires both parents to voluntarily acknowledge parentage and execute and submit to a district court judge or authorized hearing officer affidavits attesting to their desire to amend the child's birth registration. K.S.A. 38-1130(a). Once the parents meet their evidentiary burden, a judge or hearing officer who finds the birth certificate should be amended effectuates the requested change by forwarding to the state registrar of vital statistics the parents' affidavits and a certified order to prepare a new birth registration in the manner as set forth in K.S.A. 38-1128. K.S.A. 38-1130(b). K.S.A. 38-1130(c) requires the court or hearing officer to then return all evidence to the child's parents, prohibits charging a fee for performing the name-change service, and prohibits the district court from opening a case file or otherwise making any record of performing the service.

*Conflict in case law*

The difficulty in resolving this issue stems from apparent inconsistent appellate decisions that have addressed a district court's authority to consider changing a child's name in a paternity action. An overview of those decisions sets the stage for the parties' arguments:

*Struble v. Struble*, 19 Kan. App. 2d 947, 879 P.2d 37 (1994), involved a custody and paternity action in which the mother argued the child should carry the name of both parents, not just the father's, because that had become a cultural norm for a child born of a nonmarital relationship. In addition to her failure to present that argument at the trial level, the *Struble* court found the argument lacked merit. 19 Kan. App. 2d at 948-49. *Struble* held that in the absence of statutory law governing the issue of whether a child born to a nonmarital relationship should have the surname of the mother, father, or both, *a trial court has discretion to decide the child's surname based on the child's best interests*. 19 Kan. App. 2d 947, Syl. The *Struble* court found that the district court did not abuse its discretion in ordering the child's surname to be that of the father. 19 Kan. App. 2d at 949.

In *Denk v. Taylor*, 25 Kan. App. 2d 172, Syl. ¶ 2, 958 P.2d 1172 (1998), the court interpreted the KPA to conclude the legislature did *not* grant a district court authority to change a child's name in a paternity proceeding absent the express consent of both parents. In so holding, *Denk* found that courts have specific statutory authority in actions brought under the KPA only to determine paternity; make orders concerning the child's support and education, including necessary medical expenses incident to his or her birth; make custody and visitation orders; and change a child's name *with both parents' consent*. 25 Kan. App. 2d at 174-75 (citing K.S.A. 38-1121[c] and [d] and K.S.A. 38-1130). *Denk* did not mention *Struble*.

However, *Denk* relied on the court's rationale in *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998), as does Jessika, so the holding in *Killman* is worthy of mention. See *Denk*, 25 Kan. App. 2d at 174.

The *Killman* court considered a district court's authority to change a child's name in a divorce proceeding under K.S.A. 1996 Supp. 60-1610, not under the KPA. The *Killman* court applied canons of statutory construction—including the maxim *expressio unius est exclusio alterius* (the inclusion of one thing implies the exclusion of another)—to hold that although the district court had jurisdiction over a child's custody in a divorce action under K.S.A. 1996 Supp. 60-1610 *et seq.*, it lacked statutory authority to change the name of a child of the marriage. 264 Kan. at 42-43. In support, our Supreme Court reasoned: "If the legislature had wished to confer authority to change a child's name in a divorce action, it would have specifically done so as it did in reference to child support, education, custody, and restoration of a spouse's former name." 264 Kan. at 43.

In *M.L.M. v. Millen*, 28 Kan. App. 2d 392, 15 P.3d 857 (2000), the court acknowledged the holding in *Denk* and K.S.A. 38-1130's requirement that both parents agree to a change in their child's birth certificate under that statute. Nevertheless, the *M.L.M.* court questioned whether K.S.A. 38-1130 "specifically *preclude[ed]*" a name change and concluded without much discussion that *Denk* did not overrule *Struble*. 28 Kan. App. 2d at 394. The court seemed

particularly concerned by the "factually unique circumstances" of that case, *i.e.*, because the mother had remarried and the child's last name did not match the name used by either parent. See 28 Kan. App. 2d at 394. Thus, the court found:

"[T]he rationale in *Struble* better applies to this case. To construe K.S.A. 38-1130 so that one parent could unilaterally hold the other parent or a court forever hostage as to the name of a child with no recourse makes no sense, and would be a result certainly not intended by the legislature. Such a construction would also seem to violate the broad public policy interests stated in *In re Marriage of Ross*, 245 Kan. 591, 597, 783 P.2d 331 (1989), where the Supreme Court stated: '[T]he Kansas Parentage Act [is] to provide that every child has an interest not only in obtaining support, but also in inheritance rights, family bonds, *and accurate identification of his [or her] parentage.*'" (Emphasis added.) *M.L.M.*, 28 Kan. App. 2d at 395.

No mention was made of *Killman* in *M.L.M.*, perhaps because it was a divorce case and not a KPA case.

The court in *J.N.L.M. v. Miller*, 35 Kan. App. 2d 407, 412-13, 130 P.3d 1223 (2006), determined the legal standards applicable in determining the surname of a child born to a nonmarital relationship, *i.e.*, the court must consider the best interests of the child and the interests of the parents. In deciding this standard, the *J.N.L.M.* court did not specifically consider the issue of a district court's authority to change a name. Nonetheless, it cites *M.L.M.*'s adoption of *Struble* to hold that a court has authority and discretion to change a nonmarital child's name as long as the court uses the best interests of the child standard in making the change. *J.N.L.M.*, 35 Kan. App. 2d at 415. Again, there was no mention of *Killman*.

*The District Court's Decision in the Instant Case*

In its memorandum decision, the district court was unsure how to resolve the seeming conflict between these cases and questioned the *M.L.M.* court's reasoning. Specifically, the judge found:

"[The *M.L.M.* court] reaches a conclusion which does not appear to follow from the authority it cites. In other words, *Struble* was not a case in which jurisdiction to change a child's name in a paternity action was even considered. In that case, the court proceeded without even mentioning the issue of whether it or the trial court had jurisdiction. Therefore, it does not appear that *Struble* is inconsistent with *Denk*, which specifically dealt with the issue, and therefore, when the *M.L.M.*

court relies on *Struble* as support for jurisdiction to change a child's name in a paternity case, its reliance appears misplaced.

"Quite frankly, this Court, in evaluating the arguments and case law, experienced some confusion as to whether it has jurisdiction under the parentage act to change the name of a child born to unmarried parents. The *M.L.M.* decision and the *J.N.L.M.*' decision both say that I do, and the *Denk* decision says that I do not. All of these opinions are Court of Appeals decisions, and are clearly in conflict. *M.L.M.* says *Struble* survives *Denk*, but *Struble* does not appear to address the issue the [*M.L.M.* court] gives it credit for addressing. The [*J.N.L.M.*] court then simply cites and follows [*M.L.M.*] in support of such jurisdiction."

The district court also cited *In re Marriage of Cray,* 254 Kan. 376, 382, 867 P.2d 291 (1994), which recognized that conflicting opinions from panels of the Court of Appeals provided a valid ground for granting Supreme Court review under K.S.A. 20-3018(b), but held that one panel of this court lacks authority to disapprove or overrule another panel's decision. The district court explained:

"*In* [*r*]*e Marriage of Cray* says that a panel of the Court of Appeals should not overrule another panel, but it does not say what a District Court, faced with a situation in which panels of the Court of Appeals apparently disagree is to do in applying the doctrine of *stare decisis*. There is no opinion of the Kansas Supreme Court which directly addresses this issue, so no resolution is to be found in a Supreme Court case."

Recognizing that it lacked the authority to resolve the apparent conflict in cases from the Court of Appeals and had to "choose a course of action," the district court chose to follow the view most recently expressed in *M.L.M.* and *J.N.L.M.* to conclude it had authority under the KPA to change a child's last name by considering evidence under the best interests of the child standard.

*Jessika's Argument*

Not surprisingly, Jessika relies on the reasoning in *Denk* and *Killman* and supports the district court's questioning of *M.L.M.*'s reliance on *Struble*. In short, her argument essentially follows the court's reasoning in *Denk*. That is, she argues the legislature grants courts specific authority under the KPA to determine the existence or nonexistence of the parent child relationship (K.S.A. 2010 Supp. 38-1121[a]); amend the child's birth certificate if it is at odds with

the determination of parentage (K.S.A. 2010 Supp. 38-1121[b]); make provisions for the child's support and education (K.S.A. 2010 Supp. 38-1121[c]); enter orders regarding custody, residency, and parenting time as the court considers to be in the child's best interests (K.S.A. 2010 Supp. 38-1121[d]); and amend the birth certificate to add the name of a parent, correct the name of either parent or the child, or change the child's last name upon the request of both parents (K.S.A. 38-1130).

Jessika suggests she exercised her statutory right to name Kamryn under K.S.A. 65-2409a (c) and (d), after which Christopher filed his paternity action. Because the issues to be determined under K.S.A. 2010 Supp. 38-1121 were then resolved by orders of the district court, Jessika insists the sole issue remaining for determination by the court was Christopher's request to change Kamryn's last name to Stabel. Applying the maxim *expressio unius est exclusio alterius* as applied by the courts in *Denk* and *In re Marriage of Killman*, Jessika urges this court to conclude that because K.S.A. 38-1130 is the exclusive provision to address changing a child's name *under the KPA*, the legislature has not conferred upon the district court the authority to change a child's name without the consent of both parents *under the KPA*.

In arguing for us to follow the reasoning in *Denk*, Jessika agrees with the district court's finding that the *M.L.M.* court's reliance on *Struble* to support a court's authority is misplaced because *Struble* did not even consider that issue. See 19 Kan. App. 2d at 947-49. Nor was our statutory authority a disputed issue in *J.N.L.M.*, so that case may well be inapposite. See 35 Kan. App. 2d at 408. Thus, Jessika argues the district court erroneously relied upon those cases to find it had authority to change Kamryn's last name.

Jessika seems to also attack *J.N.M.L.*'s consideration of the legal standard under which appellate courts review whether a district court abuses its discretion in ruling on a request for a name change. However, it is not necessary for us to consider this contention because Jessika's sole argument on appeal involves the district court's authority to change Kamryn's name. As Christopher points out, Jessika does not argue the court used the wrong standard or erred in concluding that it was in Kamryn's best interests to have Chris-

topher's last name, so she has waived those issues. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009) (issues not briefed by appellant are deemed waived and abandoned).

*Christopher's Argument*

Christopher acknowledges the inconsistencies between *Denk* and *M.L.M.*, but he contends *Denk* failed to consider the KPA as a whole and asks us to instead follow *M.L.M.* In support, Christopher cites K.S.A. 2010 Supp. 38-1121(b), which directs: "If the judgment or order of the court is at variance with the child's birth certificate, the court shall order that a new birth certificate be issued, but only if any man named as the father on the birth certificate is a party to the action." Christopher argues that while this may apply only to paternity, it may also apply when the district court believes a child's name should be changed. He alleges this statute specifically grants the power to the district court to change a birth certificate according to its rulings, regardless of whether the parents agree. Christopher cites *M.L.M.* as support for this reading of the statute.

We disagree with Christopher's attempt to isolate a portion of K.S.A. 2010 Supp. 38-1121(b) to supply a legislative grant of authority for a district court to change a child's *name* on the birth certificate. When construing a statute to ascertain legislative intent, we are required to consider and construe together all parts thereof *in pari materia* without isolating certain provisions. See *In re Adoption of G.L.V.*, 286 Kan. 1034, 1041, 190 P.3d 245 (2008). Although K.S.A. 2010 Supp. 38-1121(b) is broadly worded to apply to a "judgment or order of the court" that is "at variance with the child's birth certificate," when properly read in context, K.S.A. 2010 Supp. 38-1121(b) appears to apply only to judgments or orders concerning a district court's determination of *parentage* under K.S.A. 2010 Supp. 38-1121(a) that are at variance with the child's birth certificate (provided any father named on the certificate is a party to the action).

Here, a change to Kamryn's birth certificate under K.S.A. 2010 Supp. 38-1121(b) was unnecessary because Jessika had named

Christopher as Kamryn's father on the birth certificate. Thus, his acknowledgement of paternity was not at variance with the birth certificate. Accordingly, we reject Christopher's suggestion that K.S.A. 2010 Supp. 38-1121(b) provides a basis for us to disagree with the reasoning in *Denk*.

We also note Jessika's response that even if K.S.A. 2010 Supp. 38-1121(b) could be interpreted to apply, to the extent it conflicts with K.S.A. 38-1130 the more specific provisions of K.S.A. 38-1130 that require both parents' consent to a change in their child's last name control because it is the more specific statute. See *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1215, 221 P.3d 580 (2009), which recognized that a more specific statute that is complete in itself controls over general statutes or over statutes that deal only incidentally with the issue.

Other than *M.L.M.* and *Struble*, the only authority cited by Christopher is *Bunce v. Brown*, No. 89,914, unpublished Court of Appeals opinion filed September 13, 2003. *Bunce* simply followed *M.L.M.* in rejecting the appellant's contention that the district court lacked authority to change a child's name in a paternity action. The *Bunce* court acknowledged *Denk* but concluded it was not controlling and cited *M.L.M.* and *Struble* in support. *Bunce*, slip op. at 4. The *Bunce* court also rejected the mother's reliance on *Killman*, concluding it did not control because it involved a district court's authority to change a child's name in a divorce action, not an action under the KPA, which the court found "includes no impediment on the trial court's discretion to change the child's surname." Slip op. at 4.

Alternatively, Christopher suggests we should find the district court has discretionary authority to change a child's surname in a paternity action as a matter of public policy. In support, Christopher argues the purpose of the KPA it to allow mothers and state agencies the ability to determine paternity of a child and collect support and to give fathers the ability to determine paternity and assert parental rights. He suggests that to the hold the district court lacks authority to change a child's name in a paternity action would

grant the child's mother an unfair advantage in choosing a name for a child not born of a marriage.

As support for his public policy argument, Christopher cites case law from this and other jurisdictions that recognizes parents' equal rights in naming their children. See, *e.g.*, *In re Petition of Denning*, No. 99,405, unpublished Court of Appeals opinion filed January 9, 2009, slip op. at 9-10, (citing same jurisdictions cited by Christopher).

Regardless, *Denning* is inapposite. *Denning* recognized parents' equal rights in naming their child. However, it did so in the context of deciding what standard should be utilized in judging a father's request to change the last name of his child—to whose mother the father was married at the time of conception—not in the context of deciding a district court's authority to consider the name change in the first place. Slip op. at 9-10. Moreover, *Denning* does not appear to have involved an action brought under the KPA. See slip op. at 5. Nonetheless, Christopher suggests that in light of *Denning's* recognition of the importance of not allowing a mother an unfair advantage from the unilateral act of naming the child, we should find the district court *should* have authority in a paternity action to listen to the evidence and make an informed decision as to what surname would be best for the child.

Christopher's public policy argument wholly ignores the fact that we cannot modify or expand a court's statutory authority because it would violate the separation of powers doctrine. *Cf. Jones v. Continental Can Co.*, 260 Kan. 547, 558, 920 P.2d 939 (1996) (discussing separation of powers doctrine in concluding appellate court could not use a court rule to expand appellate jurisdiction beyond that provided by the legislature). Accord *State v. Lewis*, 27 Kan. App. 2d 134, 141, 998 P.2d 1141, *rev. denied* 269 Kan. 938 (2000) (noting that "under both the United States and the Kansas Constitutions, absent express constitutional limitations, the legislative branch has the power to limit the jurisdiction of all inferior courts").

*M.L.M.*'s seeming disagreement with *Denk* and reliance on *Struble* to find that a district court has authority to consider a request to change a child's last name in a paternity action without both

parents' consent is particularly difficult to support. Moreover, *M.L.M.*'s reasoning that to find a district court lacks such authority without both parents' consent would allow a parent or court to be held hostage or without recourse wholly disregards the fact that there are other statutory means for changing a minor's name. For example, we have recognized a minor can petition for a name change through a next friend under K.S.A. 60-1401 *et seq. In re Application to Change Name*, 10 Kan. App. 2d 625, 627, 706 P.2d 480 (1985); *cf. In re Marriage of Killman*, 264 Kan. at 38-40, 43 (agreeing with the reasoning of Chief Judge Brazil's dissent in *In re Marriage of Killman*, 23 Kan. App. 2d 975, 980-81, 939 P.2d 970 [1997], which disagreed with the majority's finding that Kansas courts have implied authority to change child's name in divorce proceeding in part because minor has ability to file petition, through a next friend, to obtain a change of name under K.S.A. 60-1401 *et seq.*).

The *M.L.M.* court's reliance on *In re Marriage of Ross* to support its conclusion that a court must be able to consider the issue is likewise questionable. See *M.L.M.*, 28 Kan. App. 2d at 395 (quoting *In re Marriage of Ross*, 245 Kan. at 597). In that case, our Supreme Court's discussion about the KPA's purpose in providing that every child has an interest in the accurate identification of his or her parentage seems to refer only to the importance of a child *knowing* who his or her parents are, not of actually sharing one or the other parent's name. See *In re Marriage of Ross*, 245 Kan. at 597.

The *Denk* court, on the other hand, confronted this issue head-on, holding that the legislature had *not* granted district courts authority to consider changing a child's name in a paternity proceeding without the consent of both parents. 25 Kan. App. 2d at 174-75.

Although not coming out and saying so, it seems the *M.L.M.* court disapproved of the *Denk* court's decision and tried to reverse it, which it was not allowed to do without, at a minimum, en banc review. See *In re Marriage of Cray*, 254 Kan. 376, Syl. ¶ 1. Nonetheless, the district court correctly recognized that other panels of our appellate court consistently rely on *M.L.M.* and *J.N.M.L.* to reject challenges to a district court's authority to consider a request to change a child's last name in a paternity action without both

parents' express consent. See *Beebe v. Elmenhorst*, No. 103,658, unpublished Court of Appeals opinion filed August 27, 2010, slip op. at 5-6; *Bunce*, slip op. at 3-4. At least two well-respected practice guides have also recognized the inconsistencies in these decisions and alert practitioners to possible problems as a result. See 1 Elrod and Buchele, Kansas Law and Practice: Kansas Family Law, Paternity § 7.35, p. 395 (2010 Supp.) (commenting that *M.L.M.* raises interesting issues because it allowed a name change over the objection of the mother before citing the decisions in *In re Marriage of Killman* and *Denk*); 3 Practitioner's Guide to Family Law, Name Change §19.16 (2008 Supp.) (noting *M.L.M.* seems to have settled apparent inconsistencies in *Struble* and *Denk* decisions by commenting that because *Denk* was not overruled by *M.L.M.*, where both parents do not consent, a practitioner can still bring a name change cause of action on behalf of a child, through his or her next friend, under K.S.A. 60-1401 *et seq.*). Unfortunately, the parties in these cases did not petition the Supreme Court for review to allow it to exercise its discretion and resolve the conflict.

We find the rationale in *Killman*, although dealing with a divorce situation, is controlling. The statutory provisions involved in this case exclude the possibility of changing the last name of the child over the objection of one of the parents. The district court did not have the authority to do so and its ruling is, therefore, reversed.

Since we hold the district court had no authority to consider a name change under the KPA and these facts, we have no need to examine the court's reasons for granting it.

Reversed.