NOT DESIGNATED FOR PUBLICATION

No. 120,384

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHAWN ANTHONY SPRATLEY,
*Appellee*,

v.

CARI LONDON WESTON,
the Natural Mother,
*Appellant*,

and

C.W.,
a Minor Child,
*Defendant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed August 9, 2019. Affirmed.

*Lewanna Bell-Lloyd*, of Olathe, for appellant.

*H. Reed Walker*, of Reed Walker, PA, of Overland Park, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: This appeal involves one small part of ongoing litigation over many years involving the child of parents who were never married to each other. According to the district judge overseeing their case, they set upon an ongoing and relentless campaign to disparage and destroy one another within six months of the child's birth. Their current dispute involves the child's name.

1

At the time of the child's birth, Mother gave the child her last name and so indicated on the child's birth certificate. Father later sought to have the child's last name changed to his. The parties agreed to do so provided that Father made certain payments to Mother and made up an outstanding child support arrearage. Ultimately, Mother refused to change the child's last name, claiming that Father had not made the payments called for in their agreement. The district court found that Father had substantially complied with the parties' agreement, ordered the name change, and entered an order for attorney fees. Mother appeals, claiming the district court erred in finding that Father had substantially complied with the agreement and in assessing attorney fees against her. Upon our examination of the record, we conclude that the district court did not err in these rulings, and we affirm

*Procedural History*

Father filed a paternity action in December 2011, asking the district court to confirm his parentage of the child, to establish a parenting plan for the parties, to order that the child's last name be changed to Father's last name, and to order that the child's birth certificate be amended accordingly.

The district court initially advised the parties that under *Stabel v. Meyer*, 45 Kan. App. 2d 941, Syl. ¶ 2, 259 P.3d 737 (2011), the court lacked jurisdiction under the Kansas Parentage Act (KPA) to change the child's last name to Father's unless both parents consented to the name change. But as events unfolded, both parents did consent to the name change contingent upon certain payments Father was to make to Mother.

Thereafter, as memorialized in a March 17, 2015 court order, Mother and Father agreed to change the child's last name to that of Father within 30 days following Father

2

paying Mother $5,000 and making up any remaining child support arrearages to Mother according to the following schedule:

$1,000 by April 30, 2015,

$1,000 by July 31, 2015,

$3,000 by January 31, 2016, and

any remaining child support arrearage by July 1, 2016.

Mother's agreement to the name change was contingent upon Father making these agreed payments. Father's payments to Mother were to be made with certified funds.

The parties agreed that once Father made his payments according to this schedule, Mother had 30 days "in which to secure the name change." The parties agreed to execute any documents necessary to accomplish the name change. Father agreed to pay any processing fees, court costs, or attorney fees "associated with processing this name change."

With regard to the first two agreed payments, Father made those payments by check on time but did not pay by certified funds. Nevertheless, Mother cashed the checks and received the money.

With regard to the third payment, Father again paid by check but the check was not certified. Also, in the memo section on the bottom of the check he wrote: "Extortion." Mother refused to cash the check with the word "Extortion" on it, claiming it was slanderous. In a letter to Father's counsel, Mother's counsel demanded that Father send another check without this reference. Father's counsel asserted that he did not recall ever receiving this letter. In any event, Father did not respond to Mother's demand.

3

In August 2016, Mother notified Father that she intended to move with the child to St. Louis, Missouri. Father promptly obtained a temporary restraining order to prevent Mother from moving to St. Louis with the child.

The court held a pretrial conference which was memorialized in the court's February 1, 2017 pretrial order, which identified the issues to be resolved: (1) whether Mother can move to St. Louis with the child, (2) the parties' parenting time, (3) attorney fees, and (4) the name change.

With regard to the name change issue, Father contended that he had tendered to Mother all the funds called for in their agreement but Mother failed to effect the agreed name change. Mother contended that Father had not met the agreed requirements for the name change. In a later order filed on October 12, 2017, the court concluded that it had authority to enforce the agreement of the parties. The court's journal entry stated: "The Court will decide the matter of the name change, having heard the arguments of both attorneys. The Court wants to see copies of all three checks involved and it will make a decision."

Following a later hearing, the district court memorialized the proceedings in its October 19, 2017 journal entry, in which the court made the following findings:

> "3. The issue of the change in the minor child's surname remains. The court finds, effective immediately, the name of the minor child shall [include Father's surname], consistent with the Order of the Court dated March 17, 2015 (Document 48) and the Kansas Department of Vital Statistics is ordered to amend the child's birth certificate to so reflect.
> "4. Father is ordered, within 24 hours, to pay to [Mother] the sum of $3,000.00 to complete his agreed-upon payment for the change of the minor child's name . . . . The court is advised that, on Friday, October 6, 2017 Father delivered to Mother's attorney [a check] in the amount of $3,000.00."

4

Thus, Father complied with the court's order by immediately reissuing the $3,000 check to replace the one that Mother previously received but did not present for payment.

On May 14, 2018, Mother moved to modify the existing parenting time of the parties, claiming substantial changes in circumstances had occurred since the adoption of an earlier parenting plan.

Meanwhile, Father attempted to get the child's passport reissued with the child's last name changed to Father's. Father asked Mother to approve the passport application, but she refused to do so. As a result of Mother's refusal to approve the child's passport application, the district court in July 2018 issued a journal entry with the following provision:

> "At [Father]'s request, due to [Mother]'s refusal to sign the appropriate form allowing the minor child's name to be changed on his passport, the court orders that [the child] should be, and hereby is allowed to travel outside the country, specifically to the Dominican Republic, and that [Mother]'s consent to such travel, during the month of July, 2018, is not necessary. Further, this order shall operate as the necessary consent to change the child's name on his passport, or to apply for such passport, as necessary."

Mother moved for reconsideration. At the hearing on August 20, 2018, the district court addressed the outstanding parenting time issue as well as Mother's motion to reconsider. With regard to the name change issue, the court stated in its October 2018 order denying Mother's motion:

> "Mother continues to disagree with the Court's previous Order on the child's last name. The Court reminds the parties that it only found there was sufficient compliance with the parties' agreement about an agreed name change. Mother agreed to change [the child's] last name if Father paid a sum of money to Mother. There were terms in the agreement to ensure payment was received. The parties agreed on Money Orders or other certified

5

funds as payment. The Father did write checks, and they were cashed, except the last one, where Father wrote a note in the check's memo section, causing Mother to become upset. Mother was not opposed to [the child's] last name being changed under certain conditions at the time, yet Mother continues to be upset about [the child's] last name since the Court Ordered the name change for legal reasons. Mother's refusal/reluctance to follow the Court's previous Order on [the child's] last name did cause a delay in [the child] obtaining his passport."

Following a hearing on Mother's May 14, 2018 motion to modify the parenting plan based on a claim of change in circumstances, the district court found in its October 16, 2018 Memorandum Decision: "There has not been a significant change of circumstance, as required by law, to change the parenting plan." The court ordered that "Mother shall pay to Father the sum [of] $1,500 towards Father's attorney's fees."

In later proceedings to finalize the parents' parenting plan, the court entered its order on December 13, 2018, in which the court noted in a section of the order labeled "Recent Concerns": "The Court did order Mother to reimburse Father the cost for [the child's] Passport. All other attorney's fees to be paid by Mother were accounted for in the $1,500 previously Ordered by the Court."

*Analysis*

Mother's appeal brings this matter to us. She contends on appeal that, contrary to the district court's findings, Father did not substantially comply with the parties' agreement and that she did not receive the full benefits of the agreement. She also contends that the district court erred in assessing attorney fees against her.

While the district court ordinarily does not have jurisdiction to change a child's last name as part of a paternity action brought under the KPA, such is not the case when both parents consent to the name change. See *Stabel*, 45 Kan. App. 2d 941, 943-44

6

(discussing *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 [1998]; *Denk v. Taylor*, 25 Kan. App. 2d 172, Syl. ¶ 2, 958 P.2d 1172 [1998]). Here, the child's parents consented to changing the child's last name to that of Father once Father made the payments called for in the agreement. Accordingly, the issue for us is whether the district court was correct in finding that Father had complied with the agreement.

*The Name Change*

Interpreting a contract is a matter of law over which we have unlimited review. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014). Normally, whether a party has substantially performed under an agreement is a question of fact. *Almena State Bank v. Enfield*, 24 Kan. App. 2d 834, 840, 954 P.2d 724 (1998). But when, as here, the parties agree on the essential facts, it is for us to determine de novo whether those facts constitute substantial performance of the contract's terms. See *First Nat'l Bank of Omaha v. Centennial Park*, 48 Kan. App. 2d 714, 725, 303 P.3d 705 (2013).

Under the doctrine of substantial performance, performance may be considered complete even if a party fails to meet precisely the terms of the agreement if (1) that party has made a good-faith attempt to comply with the agreement's terms; and (2) the essential purpose of the contract is accomplished. *Dexter v. Brake*, 46 Kan. App. 2d 1020, 1033, 269 P.3d 846 (2012.)

On the other hand, a material breach results when the promisee receives something substantially less or different from what he or she bargained for. "'Substantial performance is the antithesis of material breach. If it [is] determined that a breach is material, it follows that substantial performance has not been rendered.'" *Almena State Bank*, 24 Kan. App. 2d at 838. If the failure to perform is so substantial as to defeat the

7

object of the parties in making the agreement, the breach is material. *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, 313, 856 P.2d 111 (1993).

Mother claims that Father's performance was deficient in two aspects: (1) he failed to pay with certified funds, and (2) he wrote the word "Extortion" on the memo section of the third check and did not replace it until long after the due date. Mother does not contend that Father was otherwise in default by not satisfying the child support arrearage.

The benefit Mother was to receive from the agreement was timely payment of $5,000 and any of Father's then-existing child support arrearage in accordance with an agreed schedule. The payments to her were to be made with certified funds. Though she received all the payments required under the agreement, they were not made with certified funds. Nevertheless, Mother presented all but the final check for payment, Father's bank honored the checks, and Mother received in a timely fashion the money she had been promised.

With respect to the third payment, Father made that payment on time but Mother refused to cash the check. We find no evidence that this was an insufficient funds check, and Mother does not claim that it was. Mother simply refused to present the check for payment because of the memo note. Father later replaced the original check with a new one, which Mother cashed in October 2017. The delay was caused by Mother, not by Father.

Mother also claims that this third check did not comply with the agreement because it was not certified. But she cashed the other checks notwithstanding the fact that they were not certified. It appears that the only reason she did not cash the third check was because she did not like the memo note on the check. She provides no pertinent

8

authority for the proposition that the memo note on the third check rendered the payment invalid. Accordingly, this contention fails.

The essential purpose of the agreement was to effect a timely name change of their child and timely payment of $5,000 plus payment of Father's child support arrearage. Father made the necessary payments to satisfy his end of the bargain. All Mother had to do was cash the checks and thereafter take the necessary steps within 30 days to change the child's last name. The essential purpose of the agreement—the timely change of the child's last name after Father timely made the payments and satisfied the child support arrearage—was frustrated by Mother's actions, not by Father's lack of performance.

The district court did not err in finding that Father had upheld his end of the bargain and in ordering the name change.

*Attorney Fees*

With regard to Mother's remaining issue, she contends that the district court erred in assessing attorney fees against her. This is an issue of law over which our review is unlimited. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013).

A court may not award attorney fees absent statutory authority or an agreement of the parties. 297 Kan. at 162. This case originated as a paternity action under the KPA, which authorizes the district court to award costs and attorney fees to either party "as justice and equity may require." K.S.A. 2018 Supp. 23-2216(a). We have previously held that the authority to assess attorney fees in a paternity action extends to matters ancillary to the actual determination of parentage. See *Ragain v. Basu*, No. 115,877, 2017 WL 2714924, at *8 (Kan. App.) (unpublished opinion) (affirming an attorney fee award in proceeding to modify a parenting plan in a paternity action), *rev. denied* 306 Kan. 1319

9

(2017). We conclude that the district court had the authority to assess attorney fees in our present case.

But Mother contends that the order for attorney fees was based solely on the fact that she did not sign her child's passport application, which she says she refused to do because she did not want to acquiesce to the judgment while her motion for reconsideration was pending. On the other hand, as Father points out, there were other matters initiated by Mother that Father was required to defend against. There was the issue of Mother's desire to move with the child to St. Louis and the issue of parenting time.

The attorney fees order Mother complains of was entered as part of the court's order denying Mother's May 14, 2018 unsuccessful motion to modify the parenting plan. She argued that a change in circumstances warranted a change in the plan, and the district court found: "There has not been a significant change."

In later proceedings to finalize the parents' parenting plan, the court simply noted that the order for costs associated with changing the child's passport are separate and apart from the $1,500 ordered previously. The $1,500 in attorney fees Mother was ordered to pay related not to the passport issue as she now claims but rather to her unsuccessful motion to modify the parenting plan, a matter over which the court had the statutory authority to assess fees. Accordingly, we are not persuaded by Mother's arguments on the issue of attorney fees. The district court did not err in the assessment of attorney fees.

Affirmed.