(954 P.2d 724)

No. 77,213

ALMENA STATE BANK, *Appellant/Cross-Appellee*, v. LARRY J. ENFIELD, VICKI ENFIELD a/k/a VICKIE ENFIELD, BROCK ELLIS, and SCOTT ELLIS, *Appellees/Cross-Appellants*.

—

Opinion filed February 13, 1998.

*R. Douglas Sebelius*, of Sebelius & Griffiths, of Norton, for the appellant.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chartered, of Norton, for the appellees.

*Charles N. Henson*, of Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, of Topeka, for *amicus curiae* Kansas Bankers Association.

Before LEWIS, P.J., KNUDSON, J., and WAHL, S.J.

LEWIS, J.: The Almena State Bank (Bank) appeals the trial court's grant of summary judgment in favor of the defendants (the Enfields). The Enfields cross-appeal from one portion of the court's judgment.

In the early 1990's, the Bank made a loan of $148,000 to the Enfields. The loan was to be repaid over 15 years at a 9.5% interest rate. The Enfields signed a note with the Bank along with a mortgage giving to the Bank a mortgage on certain real estate to secure the loan.

The note signed by the Enfields was a preprinted form in which under "Additional Terms" the Bank officer typed in "Borrower Agrees to Provide Lender with a Financial Statement on an Annual Basis."

On the back of the note were several preprinted terms. One paragraph defines default as, among other things, failing to "keep any other promise I have made in connection with this loan or any agreement securing this loan." The note further provided that if the Enfields were to become in default, the Bank could "without notice, accelerate the due date of this note and make all unpaid principal, interest, and all other charges immediately due and payable."

The preprinted form also referred to the obligation of the Enfields to furnish financial statements: "FINANCIAL STATEMENTS: I agree to provide to you, upon request, any financial statements *or information* you may deem necessary. I warrant that all financial statements and information I provide to you are or will be accurate, correct, and complete." (Emphasis added.)

Although the Enfields apparently made all the payments required by the note on a timely basis and the note was never criticized or classified by the bank examiners, it is now in foreclosure. The parties came to a disagreement over the Enfields' income tax returns—the Bank wanted them, and the Enfields refused to supply them.

The Bank made a number of requests in writing and orally to the Enfields asking for the income tax returns. The Enfields' response to the Bank's requests was to refuse to turn over the requested tax returns.

Finally, on April 12, 1995, the Bank called the note, advising the Enfields that they had defaulted on the note by failing to furnish a copy of their income tax returns as requested.

The next day, the Enfields brought their tax returns to the Bank and met with the president of the Bank. Although the Enfields did permit the Bank to inspect the returns, they would not allow the Bank to make or keep copies. The Enfields told the Bank that they would show their tax returns to the board of directors or to any bank examiners that might wish to see them, but they would not permit the Bank to make copies. At the same time, the Enfields furnished to the Bank their 1995 financial statement.

The parties were unable to resolve the impasse over the tax returns, and the Bank ultimately filed this action to foreclose its mortgage. The Enfields defended by arguing they had not breached any of the provisions of the note and mortgage and that the Bank had no right to call the note.

Both sides filed motions for summary judgment. The trial court granted the motion of the Enfields and denied that of the Bank.

The trial court found: "The Court finds that the past failure to provide copies of the defendant's tax refund [*sic*] does not constitute a material breach only an honest misunderstanding as to the terms of the contract. The plaintiff's [*sic*] are not entitled to advance said note for failure to do so."

However, the trial court also went on to conclude that "under the terms of the contract, the defendant must now provide copies of the annual tax refunds [*sic*] or suffer a future breach of the terms and be subject to call on said note."

We assume the trial judge meant to refer to the annual tax *returns* instead of *refunds*, and we so construe his memorandum of decision.

The result reached by the trial court appears to have been one designed to effect peace between the parties. True, the trial court refused to allow the Bank to foreclose at this time, but its order

makes it certain that the Bank will get the tax returns in the future or be free to foreclose the Enfields' mortgage. Despite the fact that the decree provides something for everybody, nobody is satisfied. The Bank has appealed, and the Enfields have cross-appealed.

On appeal, this court lacks the background and understanding to fashion a decree fair to all parties. It may well be that one or both parties may regret placing this matter in our hands. We have no choice but to apply the law as we see it. The stubborn impasse between these parties may produce results neither is happy with.

Initially, we observe that the trial court's decision is internally inconsistent. The Enfields either were or were not, by the terms of the instruments involved, required to furnish the Bank with copies of their tax returns. If they were and if they breached this term, they were in default. We do not understand how not furnishing tax returns is not a breach in the first instance but would be thereafter. The instruments read the same today as they did when they were signed. The obligation to the parties was set out in some detail in these instruments. A breach of the terms of the note is a breach now and forever. The decision of the trial court finds that the same conduct was not originally a material breach but will be in the future. It is impossible for us to reconcile those two findings.

Were the Enfields required to furnish tax returns to the Bank? The term "tax returns" appears nowhere in either the note or the mortgage. The instruments binding these parties do not specifically require that the buyers furnish an income tax return. It appears to us that if the Bank desires to eliminate all questions on this issue, it should add the words "income tax returns" in the list of items they expect their borrowers to furnish them.

The note requires the furnishing, on request, of "any financial statements or information you may deem necessary." It is clear that the Bank deemed copies of the income tax returns to be necessary. It can be concluded that under the clause requiring a borrower to furnish all information the Bank deems necessary, the Bank could have required the furnishing of income tax returns. We have examined the relationship and the relative sophistication of the parties and find it difficult to believe that the Enfields did not

understand their obligation to provide the Bank with all reasonable financial information it requested. We think such a request would include the tax returns of the borrowers.

Accordingly, we hold that under the facts shown, the Enfields were required to provide the Bank with copies of their tax returns upon request.

The trial court based its decision on whether there had been a "material breach" of the agreement. There is no citation of authority in favor of that particular approach.

The fact is, the Enfields did not ignore the request for their income tax returns. The day after the note was called, the Enfields appeared at the Bank, income tax returns in hand. They were willing to allow the Bank officer to examine the returns, to allow the board of directors to examine the returns, and to allow any bank examiners to look at the returns, but they would not permit the Bank to copy the returns. We believe it is one thing to say that the borrower should provide income tax returns while it is quite another to say the borrower must permit the Bank to copy and do with those returns as it pleases.

In order to resolve the inconsistency in the court's decision, we believe the analysis that should be made is whether the Enfields "substantially complied" with the provisions of the note and mortgage.

"[T]he doctrine of substantial performance does not require performance in exact correspondence with the contracted obligation. [Citation omitted.] . . .
" ' ". . . Substantial performance is the antithesis of material breach. If it [is] determined that a breach is material, it follows that substantial performance has not been rendered.' " *Bernard v. Las Americas Communications, Inc.*, 84 F.3d 103, 108-09 (2d Cir. 1996).

Further: "A breach is material if the promisee 'receiv[es] something "substantially less or different from that for which he bargained." ' " 84 F.3d at 109. "The rule of 'substantial performance' is recognized and applied in the field of contract law." *In re Adoption of Trent*, 229 Kan. 224, 233, 624 P.2d 433 (1981).

The question of whether substantial performance has taken place is a question of fact: ·

"Substantial performance is shown when the following circumstances are established by the evidence: (1) The party made an honest endeavor in good faith to perform its part of the contract, (2) the results of the endeavor are beneficial to the other party, and (3) such benefits are retained by the other party. . . . [Citation omitted.] Substantial performance is a relative term and whether it exists is a question to be determined in each case with reference to the existing facts and circumstances. [Citation omitted.]" *VRT, Inc. v. Dutton-Lainson Co.*, 247 Neb. 845, 850, 530 N.W.2d 619 (1995).

In *Cookson v. Western Oil Fields, Inc.*, 465 F.2d 460 (10th Cir. 1972), the court examined an oil and gas lease dispute where all the provisions of the lease contract had been fully carried out except for a failure to drill certain wells. The court held:

"The doctrine of substantial performance . . . operates to bar recovery for insubstantial or formal breaches arising from the wording of a contract; . . .
When all of the grievances are considered, separately and together, they present no more than technical variances from the letter of the contract, and courts will not deny enforcement in the face of a showing of substantial performance and in the absence of a detriment. [Citation omitted.]'

. . . .
"It is apparent here that the alleged breach of the contract could in no way be said to go to the 'essence' of the agreement . . . ." 465 F.2d at 462.

In *Phoenix Mut. Life Ins. Co. v. Adams*, 828 F. Supp. 379 (D.S.C. 1993), the issue was whether an insured substantially complied with requirements for changing the beneficiary of a life insurance policy. The court stated:

"Pursuant to the doctrine of substantial performance, a technical breach of the terms of a contract is excused not because compliance with the terms of the contract . . . is objectively impossible, but because the actual performance is so similar to the required performance that 'any breach that may have been committed is immaterial.' [Citation omitted.]
". . . Whether substantial compliance exists, therefore, is necessarily dependent on the specific facts of a given case." 828 F. Supp. at 388.

In *Bay City Const. Co., Inc. v. Hayes*, 624 So. 2d 1031, 1034 (Ala. 1993), the court stated:

"[W]hether a party has substantially performed a promise under the contract is a question of fact to be determined from the circumstances of each case. Furthermore, 'substantial performance' of a contract does not contemplate exact performance of every detail, but performance of all important parts. [Citation omitted.]"

In *Ujdur v. Thompson*, 126 Idaho App. 6, 9, 878 P.2d 180 (1994), the court stated:

> " 'Substantial performance' is performance which, despite deviation or omission, provides the important and essential benefits of the contract. [Citations omitted.] Substantial performance is the antithesis of material breach. Thus, there can be no 'substantial performance' where the part unperformed touches the fundamental purpose of the contract and defeats the object of the parties entering into the contract. [Citations omitted.] Although the doctrine of substantial performance most often applies to construction contracts, it is not necessarily limited to that context and may apply to any contract. [Citations omitted.]"

*Ujdur* also emphasizes that determination of whether substantial performance exists in a particular case is a question of fact.

We conclude that the trial court should not have resolved this issue on a motion for summary judgment.

The question is whether the Enfields substantially performed the provisions of the agreement in question. The record shows that they did furnish financial statements and brought their tax returns to the Bank for examination but not for copying. Whether this was substantial performance is a disputed question of fact not determinable on a motion for summary judgment.

The trial court went on to find that in the future, failure to provide tax returns on request would be a material breach, authorizing the Bank to call the note. As we pointed out earlier, this is totally inconsistent with the trial court's finding that the same actions in the past were not a material breach and did not authorize the Bank to call the note. The conclusion by the trial court as to the effect of a future breach appears to be premature. We see utility in the trial court's finding and believe we understand what it was attempting to do; but we conclude that under the circumstances, it was error and must be set aside. We hold that the determination of the future material breaches of this agreement must wait until that breach occurs.

We reverse the decision of the trial court and remand for a new trial on the question of whether the Enfields substantially performed their agreement with the Bank.

Reversed and remanded.