Johnson, J., concurring in part and dissenting in part:
I concur with the majority's well-reasoned and well-written interpretation of the "first right of refusal" provision of the 1986 contract between the Chamberlains and Kevin Trear (hereafter 1986 contract). Specifically, I agree that the parties to the 1986 contract bargained for Trear to have a "first right to negotiate" with Susan Chamberlain to purchase the described adjoining real estate upon terms and for a price that were mutually agreeable to the parties, without reference to any offers, contracts, or sales to persons or entities not a party to the contract; and that the failure of the parties to agree on price and terms after that first negotiation would cause Trear's special rights to purchase the real estate to lapse.
Further, I agree that Trear got what he bargained for when Susan Chamberlain offered to sell him the described adjoining real estate before she listed that property for sale to the public; that under the express terms of the 1986 contract, Trear's first right to negotiate lapsed when he failed to negotiate-or even respond-to Chamberlain's first proffer or subsequent public listing; and that the 1986 contract did not require Chamberlain to extend to Trear the same price and terms she offered to Jamie Jasnoski and Nathan Goodell a year later on only an unimproved portion of the described adjoining real estate.
But I part company with the majority when it concludes that, after we hold that Trear had no contractual right to obtain the relief he sought in his petition, we nevertheless cannot make the legal determination that the district court, in granting defendants summary judgment, reached the correct result, albeit based upon a different rationale. To the contrary, the majority holds that the district court's "factual findings on summary judgment" were insufficient for us to determine whether Trear's claim that Chamberlain breached the implied covenant of good faith and fair dealing (hereafter "good faith covenant") was sufficient for him to survive summary judgment. Rather, the majority believes that a remand to the district court is procedurally required because at least one of its factual findings "needs to be sorted out by the district court." Op. at 304. Specifically, the majority appears confused by the district court's finding that Trear did not appraise the described adjoining real estate, either at the time it was offered to him by Chamberlain or before he filed suit; yet, the district court also noted Trear's petition allegation that Chamberlain's offer was "artificially high."
First, I would observe that it is unclear whether the majority is reversing the district court's grant of summary judgment to defendants, thereby remanding for a trial on Trear's purported good faith covenant claim.
*306 Or, whether the majority is remanding for the district court to reconsider the summary judgment motion after making more detailed factual findings in relation to the good faith covenant issue. But either way, I disagree with the notion that this court cannot resolve the good faith covenant issue, as a matter of law, right here, and right now.
Anticipating a suggestion that the good faith covenant question is not properly before this court for review, I would submit that proposition would ignore that the overarching question in this case is whether Chamberlain breached the "first right of refusal" provision in the 1986 contract. The defendants' summary judgment motion claimed, inter alia , that Chamberlain had performed her duties under the 1986 contract; Trear responded that Chamberlain had breached the contract; after the district court granted summary judgment on another ground, the Court of Appeals effectively held that Chamberlain breached the 1986 contract by denying Trear his right of first refusal. And as the majority correctly states, a good faith covenant is imbedded in every contract. Ergo, a breach of the good faith covenant is a breach of the contract, which is precisely the subject of our review.
Moreover, as will be discussed below, a claim for a breach of the good faith covenant requires that Chamberlain denied Trear the benefit of his contract. Consequently, a review of the panel's holding that Trear "was denied his right of refusal" necessarily encompasses the question of whether that denial emanated from a breach of the imbedded contractual covenant.
But even the majority's stated reason for declining to resolve the good faith covenant-that we do not have adequate district court factual findings-makes no sense to me. In my view, that rationale directly contradicts the standard of review that the majority says that it is applying. For ease of reference, I take the liberty of repeating the summary judgment paradigm recited by the majority, to-wit:
" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." ' " Op. at 301 (quoting Armstrong v. Bromley Quarry & Asphalt, Inc. , 305 Kan. 16, 24, 378 P.3d 1090 [2016] ).
On summary judgment, the district court does not take evidence and make factual findings. Rather, it is to look at the record presented at that point, i.e., "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," and determine whether that record reveals any genuine issue as to a disputed material fact. 305 Kan. at 24, 378 P.3d 1090. If so, the district court denies summary judgment; it does not weigh evidence and assess credibility in order to resolve the factual conflict; that function is left for the trial. Instead, for summary judgment purposes, the district court is directed "to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought." 305 Kan. at 24, 378 P.3d 1090. If the facts and inferences, viewed in the light most favorable to the opposing party, show that the opposing party will lose, as a matter of law, the movant gets summary judgment.
Applying those summary judgment rules to the case before us, the district court was not supposed to make a factual determination as to whether Chamberlain's initial offer price was "artificially high"; it was to decide if that fact was disputed. To be more precise, the district court was to decide whether an artificially high initial asking price was "material *307 to the conclusive issues in the case" and, if so, whether Trear had "come forward with evidence to establish a dispute" as to whether the initial asking price was artificially high. 305 Kan. at 24, 378 P.3d 1090. Therefore, I am unclear as to what the majority means by the "district court's factual findings on summary judgment," and why the lack thereof mandates remand. Op. at 304.
Perhaps the majority means that the district court must make the first determination as to whether there is no genuine issue as to any material fact and, by applying the rule against perpetuities rather than considering the merits, the district court did not make that determination. But if that determination is to be based on the record, then deference to the district court is not required. In other contexts, where the district court looks at a K.S.A. 60-1507 motion, files, and records, rather than conducting an evidentiary hearing, we have declared that "an appellate court is as equipped as a district court to decide the issues efficiently and reliably." Laymon v. State , 280 Kan. 430, 437, 122 P.3d 326 (2005) ; see also Bellamy v. State , 285 Kan. 346, 354, 172 P.3d 10 (2007) (no reason for appellate court to give any deference to district court's factual findings when appellate court has same access to the motion, records, and files as the district court). More importantly, our own stated review standard declares that "[o]n appeal, we apply the same rules" as delineated for the district court. Armstrong , 305 Kan. at 24, 378 P.3d 1090. It strikes me as pointless, other than to generate attorney fees, to remand for the district court to consider the summary judgment motion under the same rules that we would apply now and which we will apply when the case returns to us to review the remand decision.
In short, I would first hold that we have the procedural authority, if not the duty, to decide whether there is a basis upon which we can uphold the district court's grant of summary judgment to the defendants. Then, I would affirm the district court's grant of summary judgment for multiple reasons, none of which requires the resolution of the defendants ' claim that Trear also had a good faith covenant that he breached, as the majority suggests is required for defendants to prevail. Rather, as a matter of law, Trear's response to the defendants' motion for summary judgment was insufficient to prevent summary judgment on the 1986 contract, as we have today interpreted that contract. Specifically, Trear failed to come forward with evidence to establish a dispute as to whether Chamberlain's initial asking price was artificially high; under our contract interpretation, an artificially high initial asking price was not material to the conclusive issues in the case; and our interpretation of the 1986 contract makes it legally impossible for Trear to obtain the relief he sought in his petition.
Trear's summary judgment response suggests that Chamberlain breached the good faith covenant by offering Trear the described adjoining real estate at an artificially high price and then a year later selling a portion of that land to others at a much lower price. But, in the words of our summary judgment review standard, Trear failed to "come forward with evidence to establish a dispute as to" the value of the described adjoining real estate. 305 Kan. at 24, 378 P.3d 1090. As the majority recites, the district court specifically noted that Trear had not obtained an appraisal of the real estate. Moreover, Trear does not contend that he would be qualified to testify as to the value of the real estate. While he points to the fact that the property did not sell after being listed with a real estate agent, he does not identify anyone who could opine that the reason the agent did not sell the property was because of an artificially high price. Our rules do not allow a party to avoid summary judgment with unsupported conclusory allegations.
On the other side of the ledger, Trear did not challenge Chamberlain's statement of uncontroverted fact that, in determining a sale price, she had gathered information from several sources. Likewise, it is undisputed that Chamberlain offered the land to Trear for a price that was less than it was listed with the real estate agent. Moreover, one could draw a reasonable inference that the $291,000 listing price was not artificially inflated from the fact that a real estate agent committed to invest his or her time and *308 money into trying to sell the land at that price.
To the contrary, the Court of Appeals' pejorative declaration that Chamberlain first offered the entire tract to Trear for $289,000 and "then turned around and sold most of the property to Jasnoski and Goodell for 1/3 of that price," is the product of unwarranted and unfair speculation. As the majority points out, the 64-acre tract sold to Jasnoski and Goodell for $91,124 did not include Chamberlain's house. The unit price of $1,423.81 per acre could very well be within the fair market value range of such an unimproved tract; we do not know whether the acreage is prime Flint Hills pasture, residential development property, or overgrown wasteland. But obviously, that unit price would have no relationship to the remaining 9 acres containing the house in which Chamberlain lived (and perhaps other improvements), the value of which might well be in the $200,000 range. In other words, the panel's intimation that the subsequent sale price of an unimproved portion of the described adjoining land is proof of the unfairness of Chamberlain's initial asking price for the entire, improved land is unsupported by the record before us. No reasonable inference may be drawn about the bona fides of the initial offer from the facts that we know about the subsequent sale.
Next, more fundamental than the evidentiary deficiencies, an artificially high initial asking price is not material to the conclusive issue of whether Chamberlain breached the good faith covenant. That "duty imposes both affirmative and negative obligations" and means that one party "will not intentionally and purposely do anything to prevent the other party from carrying out his [or her] part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Bonanza, Inc. v. McLean , 242 Kan. 209, 222, 747 P.2d 792 (1987).
We are interpreting Trear's contractual benefit as his possessing the first opportunity to negotiate for the purchase of the described adjoining real estate at a price and on terms that are mutually agreeable. As the majority states, "Whatever was to happen was between Trear and Chamberlain." Op. at 303. Trear's benefit, then, was not to purchase the property at fair market value, but rather to be able to negotiate the price and terms. And as the majority asserts, "Trear undisputedly had the opportunity to negotiate with Chamberlain to purchase the real estate subject to the contract upon mutually acceptable price and terms when she approached him in 2013." Op. at 304.
Similarly, in order to carry out his part of the agreement, Trear had to negotiate the price and terms of the purchase with Chamberlain. He chose not to negotiate; the initial asking price, even if artificially high, is not what prevented Trear from performing his part of the agreement. Cf. First Nat'l Bank of Omaha v. Centennial Park, LLC , 48 Kan.App.2d 714, 729-30, 303 P.3d 705 (2013) (bank's billing that stated a balance due more than owed did not hinder debtor's ability to perform under the contract and consequently did not breach implied covenant of good faith and fair dealing). Perhaps if Chamberlain had refused to negotiate in good faith, Trear might have a colorable claim. But the good faith covenant did not require Chamberlain to set the initial asking price at the fair market value of the property. See McLean , 242 Kan. at 222, 747 P.2d 792 ("essential terms of a contract on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing").
Finally, I fail to understand how Trear can be granted the relief he seeks in his petition under our interpretation of the 1986 contract. He asked for the district court to void the deed to Jasnoski and Goodell on the 64 acres and to order that property be sold to him for the price Jasnoski and Goodell paid Chamberlain. The majority acknowledges that under the express terms of the 1986 contract, Trear's first right of negotiation had lapsed by the time the 64 acres was sold. But then the majority inscrutably adds "unless there is something to his good faith and fair dealing claim." Op. at 304. But the good faith covenant is imbedded in the Chamberlain/Trear contract; Jasnoski and Goodell were not parties to that contract; and the most liberal construction of Trear's petition does not disclose *309 the legal basis upon which he purports to take land from Jasnoski and Goodell for Chamberlain's breach. In my view, summary judgment should function to terminate a case in which the plaintiff is legally precluded from getting the relief he or she seeks.
To channel Paul Simon, there must be 50 ways for Trear to lose this lawsuit. I would affirm the district court's grant of summary judgment to the defendants and end this debacle.
Beier, J., joins in the foregoing concurring and dissenting opinion.